And I want to welcome each and every one of you to the Fourth Circuit this morning. Judge Thacker and Judge Richardson and I look forward to the arguments, three interesting cases and good lawyers. So in the first case, Escobar-Hernandez versus the Attorney General Merrick Garland, Mr. Habib. Good morning, Your Honors. Good to have you with us, Mr. Habib. May it please the Court, my name is Payman Habib and I represent the petitioner in this case. Your Honors, there are two issues before the Court today. The first issue is whether the IJNBIA erred in finding that the government of Honduras was willing and able to protect the petitioner. The second issue... Well, they have to be... There are two things, ready and willing? Unable and willing. Unable and unwilling. Unable and unwilling, that's what I... Yeah, that's right. Yes, Your Honor. And the second issue today is whether the petitioner exhausted her administrative remedies in regarding to her cat protection claim. As to the first issue, according to Crestman-Valladares, whether a government is unable or unwilling to control private actors is a factual question that must be resolved based on the record in each case. In the record before us today, here the immigration judge and the Board of Immigration Appeals abused their discretion by virtually ignoring every submitted country condition in the respective analysis of the case. Are you arguing as to the incidents with Samuel as well as the incidents with Mr. Luis? Yes, Your Honor. Well, how did you not abandon your argument in that respect as to Mr. Luis since it's not... I don't see it in your briefing. Your Honor, if you look at page 12 to 13 of my brief, it's not as... Is that in the argument section? Where is that? Yes, Your Honor. It is under the unable and unwilling to protect section. You're getting ready to say it's not as what? It's not as clear as it should be? No, Your Honor. It's not as fleshed out as the Samuel persecutor, although they are related. They are... Well, this one sentence here, a felon also testified numerous times that she was afraid to report both persecutors, Luis and Samuel, because they threatened to kill the family. Correct, Your Honor. That goes to Oriana B. Barr. So can you tell me which of those 190, 196, 226, and 230 mention Luis at all? You cite a bunch of them. Yes, Your Honor. And at least when I look at them, they talk about Samuel, but none of them mention Luis. Your Honor, I would argue that the record... First of all, am I correct when you say that when you give the cites there that none of the cites support what you claim in the sentence that you're citing? Your Honor, the cites do speak to Samuel, but the record is clear that they are related persecutors. They're two fangs of the same snake because they're both part of the narcos and they work together and that was established in the record as well. So Judge Richardson is correct that none of those cites speak to Luis. Your Honor, I would have to look at the cites specifically. Are you saying they're agents of each other or conspirators or something? They're basically, they both work for the same narcos. Is that what you're saying? Yes, Your Honor. Why did you say that in here, in the brief? Why did I not say that, Your Honor? Your Honor, I believe that was mentioned in the factual section. And that was also mentioned in the administrative record on 176 and 184 where it mentions that they both work together for influential people. Let's go back to what you were trying to argue about the unwilling or unable. Let's talk just about Samuel since that's only one that the police were called on. The police, when the police were called, they did come and Samuel ran away every time, which is why they couldn't get him. And his running away, when he knew the police were coming, is some indication that he thought at least the police would be effective. Why would he run away if not? Your Honor, he also ran away when the petitioner's husband was visiting from the United States. So I think that cuts against that argument. But he's afraid of both authorities? He's afraid of men in general. He's a coward. It's not clear. Right, but that includes like the men that are law enforcement officers. They could be female law enforcement officers as well, it doesn't say. So the point is that the police did arrive. It's not that they were unwilling to assist. They arrived when called with regard to Mr. Samuel. They weren't called at all with Mr. Luis, correct? That is correct on the record, Your Honor. So they weren't even given a chance to respond? They were not. But you say they're alter egos, a package deal. They are a package deal, they are a duo. So every time you say Samuel, you mean both of them? Every time you say Luis, you mean both of them? I do, Your Honor, in a sense. But also, Samuel was the common law partner of Petitioner's stepdaughter. So he lived across the street from Petitioner. So his threats were more concrete and menacing and they were more frequent because there was more of a connection between the family and the threats. Are you focused more on being unable or more on unwilling? Your Honor, the Petitioner only has to show one of those. I know. Which one have you got the best argument on? Your Honor, I would say unable would be the better argument. In this case, the police did arrive. In her testimony, numerous times, she testified that they arrived late, they were delayed. If you can imagine, they would arrive, in the record it speaks about the kids crying and her being bruised. So they arrived to see a battered woman. So what's your evidence that they were unable? That's the one you said you're focusing on. That they were unable to assist, Your Honor? Your Honor, I think the strongest evidence is that after there was an incident in July of 2014, where Samuel goes to this birthday party where the Petitioner is at, where her stepdaughter and other family members are at, and he grabs a knife and he stabs the Petitioner's stepdaughter. They remained in Honduras for up to almost 60 days, and that's from the judge's decision on AR-68, and they filed a police report. That's AR-308, which was submitted into evidence, and nothing happened. Nothing occurred. They were there for almost two months. This was after the police were aware of the threats, and she testified to that in AR-220. They were aware of the death threats. This had been happening for years. There had been at least six times they had been called, and nothing was done. And then furthermore, in 2018, before the Immigration Court… In each of the instances prior to the last instance, she refused to file a police report. She refused to press charges, right? Your Honor, I think it mentions on AR-198 that they asked her to file an additional police report after they arrived at the scene, and she said… They asked her to go to the station and file a report, and she did not. Because she had tried before, and nothing came of it. Where's the testimony that she gave that that was the reason why she did not do so? I believe that's in AR-198, Your Honor. And where's the evidence that she actually filed a police report prior to this… The July of 14 issue that you're raising? Your Honor, it's not in the record. We just have the credible testimony from the petitioner and her son, who both were afforded credibility from the immigration judge, that they had attempted numerous times to do so. So you suggest that they were there for 60 days, and you cite the AR-68, which is the brief of the… Who is the party? That's the immigration judge's decision. Yes, Your Honor. I'm with you. It's in there. Your Honor, even stronger than the 60 days, in my opinion, is that in 2018, when they were at their merits hearing before the immigration court… Can I just ask for clarification? Because you said that the evidence showed that they were there for at least 60 days, and this says that they left within 60 days, which could have meant they left immediately, or it could have meant they left at day 59? Your Honor, I believe on AR-454, in their actual asylum application, which I believe is Exhibit 2 from their immigration court proceeding, it speaks of when they left the country, which was… I believe it's a little under 60 days, but it wasn't immediately. I can read it. You don't need to pull it up. I'm just trying to make sure I understand the record. Thank you, Your Honor. And if you fast forward to 2018, which is roughly four years after the stabbing incident, in immigration court, she testified that they actually had… Well, first, in terms of Luis, in 2015, she had mentioned that Luis attempted to rape her niece after she was already in the United States. And in terms of Samuel, she mentioned that he actually had threatened her mother five months ago, and this is AR-205. So, five months ago in 2018 shows that even a few years later after the incident in 2014, after they relied on the government to do something, after numerous attempts to seek their help, nothing occurred, nothing happened. He was still terrorizing the family years later. I think that is strong proof that the government was unable and unwilling to assist her. And even if they were willing to do so, the country conditions, which goes back to my first argument, were arbitrarily ignored by both immigration judge and the BIA. And in the submitted country condition reports, there's numerous citations, which I do cite in my brief on page 16 and 17. And just to reiterate on AR-321, 324, 326, 329, 330, 331, 39, 40, 79, 82, 83, 87, these are all, there's support in the record that the BIA and the immigration judge completely ignored speaking to the organized criminal elements in Honduras, the inefficient judicial system, corruption, impunity, the struggles of the government, their lack of resources, their lack of vehicles. So even if they were willing, a firefighter without a water supply is not going to be able to put out a fire just because they're willing to do so. They didn't have the ability to do so. And the record is clear within the numerous times that she testifies that she sought their help. It was overall ineffectual. Assuming Louise is, the situation with Louise is properly before the court, she didn't seek the police assistance with regard to him. She didn't call the police. So they were unable to assist arguably because she didn't ask them to, correct? Arguably, yes, Your Honor. But I would say because they do, they are related to one another, and she was frustrated in her ability to seek protection from Samuel. And how are they related to one another? Because Samuel was a domestic violence situation with her stepdaughter, and Louise was a gang-related situation with her son. So how are those two related? Both Samuel and Louise worked for the narcos organization. They worked for a drug criminal organization together. But the threats to Petitioner are completely separate. We just don't agree with that. Your Honor, they are separate but related. I think I... Where in the record do we find that? You keep saying they work together, they are related. I get there's separate evidence. At some point they say Louise works for the narcos and Samuel works for the narcos. But where do we get this together? How do we know they're the same narcos, which I assume is like not an organization itself. It's a descriptive term. These are narcotics traffickers. Right. But why do we think that they're together or associated or related? Your Honor, I believe on AR-176 and 178 answers that question. She mentions that they are two people that work for the criminal organization, and one of them was married to my stepdaughter. And then on 178... The criminal organization? Yes, that's what she testified to. Do we know what that is? No, it's not clear in the record which narcos organization it would be. And on 178 she mentions that they were bodyguards for some narcos. And then she also mentions that Petitioner observed... Excuse me, and then Petitioner observed that Samuel and Louise worked with influential people, and that's on 184. And your position is that from that, the only possible conclusion, the substantial evidence would only support the conclusion that they were partners and working together in their persecution of the Petitioner here. Your Honor, I... I mean, that's a little bit of the rub, right? I mean, again, your point, maybe it's arguable they are. It doesn't sound like to me they are, but... But I don't think it matters either way, Your Honor, because independently the persecution from either one of them was... Totally, you might have that argument, right? But you're responding to Judge Thacker's argument about whether we have to tie them together. I'm trying to focus on that argument. You can say, yes, even if I lose, I might have some other argument, right? But this is the question you keep saying. They are together, they are partners, they are one in the same. We have to treat them as a single entity. Yes, Your Honor. That seems unsupported by the record. Not that you might not have an argument to that, but that's not our role, right? Like, we don't get to pick and choose if we might be able to infer something that's in your favor. That's not our standard of review. Understood. May I respond, Your Honor? I'm almost out of time. Please. I will say... You answer questions as long as you... Yes, Your Honor, so... They're opposed to you. There is due deference always with agency decisions, but deference is not blind and toothless. And that's my point here. She testified in AR 235 that Luis and Samuel were going to kill... I believe this was Dorian, the son, they were going to work together to kill him. So that's mentioned in the record that they are related. And throughout the record, it mentions how they're related. And independently of that, you know, I'm just establishing through the record that they do work together, but independently, the threats are sufficient. And the attempts to reach out to the police were sufficient enough as well to show that the unable and unwilling Frank had been met by the petitioner. Thank you. I'm out of time. I have a question for you. Yes, Your Honor. Is it your position that the credibility finding made by the immigration judge is sufficient to make a prima facie case for you? That her testimony alone is enough? Your Honor, I'm arguing two things. I'm arguing that it's an abuse of discretion that the BIA and IJ completely ignored the country condition reports. In fact, the BIA cited to one page on page 343 of the record about gender violence, which seems to confuse the petitioner's PSG, which is a family-based case, with the petitioner's stepdaughter. So not only did they ignore all the country condition reports, they seem to arbitrarily cite one unrelated page in the numerous pages that I'd previously cited, Your Honor. And so there's an abuse of discretion there. And then I'm also arguing that substantial evidence does not support the factual findings because she testified, Dorian testified, both of them credibly, that they had relied on the police numerous times to no avail. And as Oriana B. Barr has mentioned, ineffectual nominal assistance from the government is not enough. So did that take your answers? No to my question, or yes? The answer is yes, Your Honor. The credible testimony alone would be sufficient, but there's more, there's an enhanced reason. I didn't ask you that. I asked you a very simple question, and I still don't know what your answer is. Is the credibility finding alone enough? Yes, Your Honor, it is. With the facts of this case, it is. All right. Thank you, Your Honor. Thank you. Yes, and Mr. Nsingha, you're here for the Attorney General? Yes, Your Honor. Good to have you with us, sir. Good morning. It pleases the court, Andrew Nsingha on behalf of the Attorney General. Under this court's deferential standard of review, which is not abuse of discretion, the record does not compel a reasonable fact finder to conclude that the government of Honduras was unable or unwilling to aid petitioner, particularly with regards to Sandville. The other claims are simply not before the court for either abandonment or failure to exhaust the petitioner's administrative remedies before the agency. Since we've been discussing Lewis, the drug dealer, let's begin there. Petitioner's opening brief did not raise claims about how the government was unable or unwilling to protect petitioner from that drug dealer who was attempting to recruit her son to also become a drug dealer. While there seems to be some, at best, we would say vague relationship between these two men, these situations were separate. They were separate by time, they were separate by the physical location in which these situations occurred. Well, opposing counsel says that the BIA only cited to one page from all the materials that he submitted or that are part of the country conditions and that related to gender violence. So that wouldn't relate to Lewis, the drug dealer, correct? Well, that dwells on sort of the separate claim about, yes, addressing the country conditions claim evidence. Petitioner's argument is simply inconsistent. The board cannot both completely ignore records and then also cite the record. Here, the immigration judge- Well, nearly completely. I take your point that you're responding to him saying that the board completely, twice saying that the board completely ignored country conditions and then cite, but you say they did cite to it, but they only cited to one page of it and the one page was about gender violence. At least that's opposing counsel's position. What's your position? Well, first, both the immigration judge and the board recognize the country conditions evidence, but what is that country conditions evidence? It's one country report. But that country report then is in the context of a case in which the police arrived at the house each time. So the board discussed the country conditions to the extent necessary in the context of this case. In the context of this case is that there's specific evidence that every time the stepdaughter or a petitioner, to be clear, well, there is no particular clarity about who is calling the police in these situations, Your Honor, and at times, I think we need to back up and ask ourselves that petitioners presenting argument through counsel and asking this court to make inferences, that's not this court's role. It's the immigration judge's role as a fact finder. What petitioner needs to present to this court is how the immigration judge was compelled to make those inferences on her behalf. So that country conditions evidence then, the board did, in general, discuss crime in Honduras. This is not, I think even as this court is well aware, these claims are fairly common. The agency sees them every day, probably multiple times every day. When they cite the country reports and talk about general crime, well, that is what, in fact, that really is what petitioners attempt to present to this court. Just to sort of focus you down a little bit on what I'm trying to understand, what I believe is Judge Thacker's question, with respect to Samuel, I take your argument is that the reference to the gender violence was specific to Samuel, right? And that that really is addressing Samuel. Correct. Right, and the question is, was there material evidence in the country report that needed to be addressed with respect to Luis, right? So in other words, if the country report said, for example, Honduras has jails that are empty and they are not arresting drug traffickers and there's no law enforcement taking place in the country, and they didn't address that, that'd probably be a real problem for you. But that doesn't seem like what the country report says. No, in fact, the country reports show that Honduran prisons are overcrowded. Are what? Are overcrowded. The police are often accused- I didn't take these at random, right? That's the point, right? That nothing in, you have to address the country report where they're inconsistent with the other findings that you're making, right? Yes, you have to address the immigration judge who did address the country reports, to the extent necessary, particularly in the context of CAT. The immigration judge addressed the fact that there is crime and corruption. Again, these are not complicated facts. The petitioner testified to that. We understand that there is crime and corruption in Honduras. So the immigration judge addressed it to the extent that the immigration judge deemed necessary. If petitioner felt, again, that these five particular pages, that these are really gonna, the immigration judge should address them, well, then the petitioner should have raised that to the board. Instead, what petitioner did is told the board, here's petitioner's testimony. In fact, petitioner's brief to the board only relied on her testimony. So now petitioner comes to this court and says, no, hold on a second. You really should address these five pages, five specific pages in the country report. This is the whipsaw technique, Your Honor. The agency can't address evidence if petitioner never points out, hey, you should address these five exact pages. If petitioner's able to tell this court, these five exact pages really would have made my case, then tell the agency that, Your Honor. And perhaps we'd be having a different discussion, but we're not. Yeah, and your argument is that the agency did consider the country report, period. It, period. It did. But particularly with regards to Samuel, which really is the case claim, even in argument today is the focus of petitioner's claim, because all the record sites simply talk about Samuel. They don't talk about the drug dealer recruiting Dorian, the other petitioner. The reason the reference is the gender-based violence is because the stepson was abusing the stepdaughter. It was a domestic violence situation. In fact, it's kind of curious petitioner's attempts to suggest gender is completely irrelevant when, in fact, petitioner's own brief on 12 or 13, I believe, talks about how even Lewis was motivated to attack petitioner because she was in a maternal relationship. These gender concepts are relevant, and further, petitioner specifically testified that Samuel would not have done this if she had male protection. Again, there's complicated gender issues here, and that's why the board referred to the general concept of crime and corruption, and then referred to specifics of gender. What about opposing counsel's argument that ineffectual or nominal assistance is not enough? He said there's authority for that. It's not enough to find that the police were effective. Citation and legal concept are correct. The problem is when petitioner doesn't present to this court is evidence, not argument of counsel, not inferences that petitioner's counsel would like you to make on behalf of his client. What we need is evidence in the record, not, again, not inferences. And I guess he would say, right, which would be an inference, that because of the fact, even though the police came every time, every time they were called with respect to Samuel, I know they weren't called with respect to Lewis, then nothing was ever done. Nothing ever came of it. So that would be petitioner's evidence that they were ineffective and only provided nominal assistance. That is the argument. Part of the problem here is, again, the simple fact. That's a fact, isn't it? She said it. It's the lack of detail. What we know. She said that, and your colleague here says his position is that the finding of credibility undermines your case. That is wrong. I know, but that's what he says. That's what I want to get you to focus on. It's contrary. You have to accept that she's credible. You're willing to do that. Immigration judge did so. You have to accept it, too. It'd be here today. You and the Attorney General of the United States have to accept the proposition that she's credible and then argue that even being credible, it's not enough. The Supreme Court has already held that, Your Honor. Ming Dai. It really needs to be a point of emphasis if this is any issue. The Supreme Court hadn't ruled on her credibility. Ming Dai. The IJ testified, ruled on her credibility, and he said she's credible. Ming Dai. And so her, you have to take what she said as true. Supreme Court explicitly said that being found to be credible in the sense that we don't necessarily. But it's not necessarily enough. You can say it's not enough, but you have to say she's credible because the IJ says she's credible. And credibility in this context is not sufficiency. We're not talking about. Well, I'm not saying it is sufficient. I'm saying you have to accept it. Correct, but credibility. No, but you argue, it sounds to me like you're arguing she's not credible. No, Your Honor, what's. But then you're getting to get off of that and say I accept the fact she's credible. Your Honor. Because the IJ said she's credible and you have to accept that. Any suggestion that to the contrary is simply a straw man argument, Your Honor. The Attorney General's not suggesting that. I mean, these IJs do that all the time. They say that they end to cause problems in these cases. But when they find people credible, they got more to deal with. With all due respect, Your Honor. We have more to deal with. The Supreme Court has said that's not correct. Being credible does not mean that you have presented that your testimony is sufficient. I didn't say it was. But I'm trying to get you on, get off the horse of saying or arguing that her credibility is under question. It's not. No one is suggesting that, Your Honor. But what Ming Dai says is that sufficiency is a relevant issue. And petitioner, all we have before the court is similar to this court's decision in Muliani. In Muliani, the court said, well, the persecutor was attacking the person and some bystanders started yelling across the street, hey, hey, or oi, oi. And the persecutors ran off. Another time, the persecutors were attacking the individual and they heard a siren and the people ran off. That is a good indication that this court said in Muliani, that is a good indication that the persecutors themselves did not feel that they were free to harm the applicant in that case. In this case, each time, Samuel ran off. Ran away from the police and into the mountains. Beyond that, we don't know the nature of the interaction at all. Nothing, we have no further detail other than the police come, he runs off into the mountains. Three days later, he comes back. Well, but it seems like to me, when we talk about the ability, the fact that we know is that the police ask her to go to file a report and she refuses to do so. Right, Your Honor. Right, and so the fact that he's not later arrested, I'm not saying it's right or wrong. My question is just, isn't that substantial evidence that any inability to do something is not the government's inability, but the complainant here, the stepdaughter's inability? I mean, this is, and that is in no way to blame her, right? Domestic violence are complicated in our own circuit. We have problems here in the United States, just like they have everywhere else. But that's not the government's inability, right? Correct, Your Honor. That's sort of the follow-up of these concepts, is the police come, they say to do something. Petitioner said that she never filed anything. Katie's statement, the stepdaughter's statement, the difficulty concept is the concept of would file a report. And the police told her to file a report. What exactly that means in the context of Hunter and Law, I don't know. There's nothing in the record. But that is essentially what was requested. That did not occur. At best, we know until the final incident when they did file something. But in fact, Samuel's own actions reflect that he didn't want them to file a report. Petitioner attempts to present a fact that's helpful to them, the fact that Samuel threatened to kill them if they did file a police report. Now, that certainly goes to the nature of this man's willingness to threaten death. But what it also shows is that Samuel himself did not want them to file a police report. If he doesn't want them to file a police report, it's similar to him running off into the mountains. It's because he felt the government was not unable or unwilling to stop him in his behavior. Will you respond briefly at least to your colleague's argument that we see unmistakable inability, right? So substantial evidence review inability by Honduras because after the July of 2014 attack, nothing happened for 50 odd days until they left in September of 14. Why is that? The fact that he wasn't arrested, I assume, is the argument within 60 days. Why does that not unmistakably prove that Honduras was unable to address domestic violence? Because we don't know what happened. What Petitioner cites is that the immigration judge says within 60 days, the family left. That's really what we know. We don't know what the police did or did not do. We do not know if they followed up. We simply don't know. And so Petitioner can't point to the unknown to say, well, a fact finder has to find that the police were not gonna do anything. Because again, we don't know. What Petitioner needs to do is not argument of counsel, not inferences, but record evidence that says this record compels a conclusion the police were not gonna do anything. Beyond that, touch briefly on the CAT. It's not before the court, simply because Petitioner's brief to the board did not raise it. If Petitioner wanted, again, to raise CAT protection for lead Petitioner because the other Petitioners are not eligible for CAT protection. If Petitioner wanted to raise that claim to the agency, again, Petitioner was free to do so. Instead, what Petitioner points to this court is arguments to the immigration judge. We understand that Petitioner applied for CAT protection. The immigration judge denied. What Petitioner needs to do is say, board, here's why we should have won. Petitioners represented by counsel did not do that. So, CAT protection is not before the court. Although exhaustion is no longer jurisdictional, it is nonetheless mandatory. So, we'd ask that the court deny the Petitioner. Thank you. Thank you. Thank you very much. Mr. Harvey, you've got some rebuttal time. Thank you, Your Honor. I just wanna address some points my colleague made. We do know that the police were ineffective in this case because when the Petitioner testified in 2018 in their immigration court proceedings in the Arlington Immigration Court, she credibly testified on AR-205 that Samuel was still terrorizing her mother. This was years after the police report was filed in 2014. The police reports his attempted parasite, which is killing of her relative. He was, there was a police report for attempted murder of Katie. She was hospitalized for five days. They remained at Honduras for an odd 50 days or what have you. Nothing was done. And we do know years later, nothing had been done as well. I will say the way the government categorizes or perceives Samuel makes it sound like he is this mastermind that's able to just elude the police. But I think a reading of the facts is clear that if the police shows up late and delayed every single time consistently over years, he could hop away and escape and evade capture. That shows they're not effective at all. I do also wanna raise that there are numerous pages in the country condition reports that the BIA and the IAJ completely ignored that were very relevant, that were much more relevant than gender-based violence. This is not a gender-based violence case. This is a family-based case. There is substantial. When you raise that, I mean, what your brief says is we asked the board to take notice of the country conditions report that clearly indicate the ineptness of the Honduran government, right? Yes. Period. No citation to it, no description of what we're supposed to be looking at, not the five pages. And then it immediately goes to the testimony, right? And so I guess a little bit of this question, I don't think it's exhaustion per se, because you do say, look at the country conditions report, but the degree of specificity we require of the board has to relate to the degree of specificity that you asked the board to do. And so if you just say, look at the record, you'll find something in there that might help me. We ought not to require the board to be as specific. If you instead said, look at pages four, seven, nine, and 12, where they show A, B, and C, well, then we would ask the board to address four, seven, nine, and 12 in A, B, and C, but you don't do that. And so I guess I'm having trouble understanding how I can fault the board for addressing the five pages that you only chose to identify to this court and not the board. Your Honor, as the government has stated, the immigration judge in the BIA has seen the country conditions, these are Department of State country condition reports, they see them constantly and daily. We submitted the, I believe it was the 2017 Department of State report, as well as the OSAC report in this case. So for that reason, we focused on the actual testimony, because they were very familiar with the record, because they deal with it constantly. No, but you understand my concern, right? That if we're gonna require more specificity in addressing the country report, we ought to only do so when you tell the board what they're supposed to be looking at, not here's the country report, find the stuff in it that's good for me, and when you don't find the stuff that's good for me, I'm gonna complain about it to the Fourth Circuit. Your Honor, but there needs to be, I mean, through Portillo, Flores, Vigarland, Rodriguez, Arias, Irita, Deras, there's a host of Fourth Circuit cases that put this burden on the fact finders, on the agencies to substantially review the case, because they're- They did, and they cited the one provision that they thought was relevant from the country report, right, that they're making imperfect efforts to combat gender violence. I understand you think that wasn't the right place, right, but we can't say they ignored it entirely. I know you've made that argument, but assume for hypothetical that that's not true, because they actually cite the section that addresses gender violence. What I'm having trouble with is us do that go back and sort of nitpick and be like, but they didn't address pages five, seven, and 12. When you don't address five, seven, and 12, you don't point them to those provisions, you don't tell them this is the evidence we want you to look at. Your Honor, I would argue the gender violence claim seems to mischaracterize the whole basis of this case for the petitioner, because they focus on the petitioner's family member rather than the petitioner herself. The petitioner's family member was dealing with gender violence. All right, so that's not responsive to my question, though, right? That's a different argument. Right. I assume because you're not answering the question, you agree when you don't provide specifics, the board doesn't have to address those specifics. Your Honor, I would like to just quote a case from this court where it says, the agency must announce its decision in terms sufficient to engage a reviewing court to perceive that they had heard and thought about that evidence. There's plenty of examples in Fourth Circuit precedent where- That evidence, but you didn't give them the evidence that they were supposed to consider. That's, I think, Judge Richardson's point. Your Honor, it wasn't pinpoint cited in the brief, I'll concede to that, but it was submitted into evidence and it was part of the record. And, Your Honor, just briefly, if I can touch upon- Then you're saying that the IJA or the BIA have to mine the record to help you out, or that we have to mine the record to help you out. We need some help from the lawyers, too. Yes, Your Honor, but they also need to go through the record to help themselves out, is also our point, because there's no proof that they've looked at the record if they don't cite to it, as well. They said they looked at the country reports, BIA. The BIA, the only time that they do cite the country condition report was that one citation to the gender-based violence, which I think is not truly relevant to the actual crux of this case, because the gender-based violence is relevant to her stepdaughter, who's not a writer in this case, and that's tangential to the case today. I just want to touch upon the CAT issue. I think your time's up, too. Go ahead and finish your thought there. I'll be very quick, Your Honor, thank you. In regards to the CAT issue, this court has recently had a decision in Tapos v. Garland regarding an exhaustion argument. In that case, the petitioner filed a notice of appeal. He mentioned a jurisdictional argument where he said the USCIS should have jurisdiction rather than the immigration judge, because he entered as a UAC, and it was a class action settlement, GOP, BDHS. This court found that the petitioner had not exhausted his argument, because he had noted it in the notice of appeal, but then failed to put it in his brief. And in fact, in his brief, he had cited that there's only one other issue, and he put himself in the corner. And then he also was citing that this case should be remanded to the immigration court, which contradicted his whole argument in the first place. I don't have too much time, but in my brief, I cite to- You don't have any time left. I cite to numerous times, Your Honor, where we did raise and initiate the CAT argument in this case. Thank you. Thank you. We appreciate your argument, counsel. We'll come down in our Greek council, and then we'll proceed to our next case.
judges: Robert B. King, Stephanie D. Thacker, Julius N. Richardson